# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 14-CV-5448 (JFB)(SIL)

CHURCH OF GOD BY FAITH, INC.,

Plaintiff,

VERSUS

CARVER FEDERAL SAVINGS BANK ET AL.

Defendants,

VERSUS

LAWRENCE AND WALSH, P.C. ET AL,

Third-Party Defendants.

**MEMORANDUM AND ORDER**
October 3, 2016

JOSEPH F. BIANCO, District Judge:

Third-party defendant Lawrence and Walsh, P.C. ("L&W") moves to dismiss the amended third-party complaint of defendants/third-party plaintiff Carver Federal Savings Bank ("Carver").[1] The amended third-party complaint asserts a claim against L&W for legal malpractice, based on alleged negligence in representing Carver in connection with the issuance of a loan in September 2009. Because Carver's claim against L&W accrued in 2009 and, thus, is barred by the statute of limitations, the Court grants L&W's motion to dismiss.

## I. BACKGROUND

### A. Factual Background

The Court takes the following facts from Carver's Amended Complaint. (Carver Am. Compl.) The Court assumes these facts to be true for purposes of deciding this motion and

---

[1] Although L&W's motion also sought to dismiss the third-party complaint of CFSB Realty Corp. ("CFSB"), in the opposition brief, counsel noted that the stipulation of dismissal discontinued CFSB's third-party action against all parties. In its reply, L&W noted that, because it was conceded that CFSB's claims had been discontinued against all parties, including L&W, it would not further address arguments in support of dismissing CFSB's claims. Thus, because the parties both agree that CFSB's claims against L&W no longer survive, the Court need not, and does not, address the arguments regarding dismissal of CFSB's claims.

construes them in the light most favorable to Carver, the non-moving party.

This action arises from the an action commenced by Church of God by Faith, Inc. ("Church of God") against Carver and others seeking to quiet title to real property located at 114 a/k/a 118 and 124 Long Island Avenue, Wyandanch, New York (the "Property"), as well as for monetary damages (the "Main Action."). (Carver Am. Compl. ¶ 1.) Carver alleges that, as a result of L&W's legal malpractice, Carver made a loan to Full Gospel Church of God By Faith, Inc. ("Full Gospel") in the original principal amount of $700,000.00, secured, in part, by a mortgage on the Property (the "Loan"). (*Id.* at ¶ 2.)

Carver, which is a federal savings bank, alleges that in or about 2009, Full Gospel, by and through its Chairman of its Board of Directors and President, Pastor Sherman Roberts ("Roberts") requested a loan from Carver. (*Id.* at ¶¶ 5, 8.) Carver retained L&W in connection with the loan request. (*Id.* at ¶¶ 9-10.) On or about June 4, 2009, Carver issued a commitment letter in which it agreed to make the Loan to Full Gospel subject to various conditions, including that, prior to making the Loan, Full Gospel, was required to deliver to Carver "any required order pursuant to New York law" and that Carver would be given a first mortgage lien on the Property. (*Id.* at ¶¶ 12-13.) On July 29, 2009, L. Benet McMillan, an attorney for Full Gospel filed a Verified Petition in the Supreme Court, State of New York, County of Suffolk, which sought to enter into the Loan with Carver (the "Petition"). (*Id.* at ¶ 14.) By order dated July 29, 2009, Judge Jeffrey Arlen Spinner of the state court authorized Full Gospel to give the mortgage to Carver. (*Id.* at ¶ 15.) On or about September 1, 2009, Carver made the Loan to Full Gospel. (*Id.* at ¶ 16.)

Carver alleges that the Loan was closed by L&W on Carver's behalf and that L&W prepared all documents in connection with the Loan. (*Id.* at ¶ 17.) Carver further alleges that L&W received a title report that gave it actual knowledge that Full Gospel did not own the Property, but rather, that the Property was owned by Church of God, yet, did not inform Carver that Church of God was the record owner of the Property, or review Full Gospel's Petition and Order to investigate or reconcile the discrepancy. (*Id.* at ¶¶ 18-20.)

Carver alleges that, on the day of the closing, Roberts executed two deeds (the "Deeds") on behalf of Church of God, purporting to transfer the Property to Full Gospel, but that L&W failed to inform Carver of the transfer. (*Id.* at ¶¶ 21-22.) Carver further alleges that Church of God is subject to New York Religious Corporation Law, which requires prior leave of a court before a religious corporation may convey its real property, but that L&W failed to advise Carver of this law, that it should cancel the Loan since the Deeds were not properly authorized, or that Church of God could seek to invalidate the Deeds. (*Id.* at ¶¶ 23-27.)

In or around June 2014, Church of God indicated for the first time that it did not authorize the Deeds and would seek to quiet title, and commenced the Main Action in September 2014. (*Id.* at ¶¶ 31-32.)

B.   Procedural Background

The Main Action was commenced on September 17, 2014. On November 10, 2015, Carver filed a third-party action against L&W and other third-party defendants. On February 10, 2016, Carver filed an amended third-party complaint.

On February 17, 2016, a stipulation of dismissal was filed, which the Court So Ordered on the same day. The stipulation dismissed all claims, counterclaims, and

2

cross-claims asserted in the Main Action with prejudice. With respect to the CFSB third-party action, the stipulation dismissed "all claims, counterclaims and cross-claims asserted by CFSB, Leid, McMillan, Roberts, Meade and Kinard against one another" without prejudice. (Dkt. No. 107, at 2.) With respect to the Carver third-party action, "all claims, counterclaims, and cross-claims asserted by Carver, Leid, McMillian, Roberts, Meade and Kinard against one another" were dismissed without prejudice; however, the stipulation provided that "[t]he Carver Third Party Action and all claims asserted by Carver against [L&W] shall survive the execution of this Stipulation." (*Id.*) The stipulation further dismissed, without prejudice, all claims, counterclaims, and cross-claims asserted by Carver, CFSB, and Duncan against one another in the third-party actions.

On March 10, 2016, L&W filed a motion to dismiss Carver and CFSB's amended third-party complaints. On April 11, 2016, Carver filed its opposition. In its opposition, Carver noted that, although L&W also sought to dismiss the amended complaint filed by CFSB, CFSB had already discontinued its third-party action against all parties by the stipulation. L&W filed its reply on April 25, 2016, and also submitted an amended reply on the same date. In its reply, L&W noted that, because the opposition conceded that CFSB's claims had been discontinued against all parties, including L&W, it would not further address arguments in support of dismissing CFSB's claims. The Court held oral argument on June 15, 2016. The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to

3

consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").

### III. DISCUSSION

L&W moves to dismiss, arguing that Carver's claim is barred by the statute of limitations. In particular, L&W argues that Carver's claim for legal malpractice accrued on September 1, 2009, when Carver's loan to Full Gospel closed. In response, Carver argues that its cause of action did not accrue until Church of God took action to quiet title and annul the Deeds, which occurred, at the earliest, on September 17, 2014. For the reasons set forth below, the Court concludes that Carver's claim is barred by the statute of limitations and, thus, dismisses Carver's amended complaint.

Under New York law, the statute of limitations for claims of legal malpractice is three years from the accrual of the claim. N.Y. C.P.L.R. § 214(6); *Grace v. Law*, 21 N.E.3d 995, 999 (N.Y. 2014). "In most cases, this accrual time is measured from the day an actionable injury occurs, even if the aggrieved party is then ignorant of the wrong or injury. What is important is when the malpractice was committed, not when the client discovered it." *McCoy v. Feinman*, 785 N.E.2d 714, 718 (N.Y. 2002) (internal quotation marks and citation omitted); *see also Landow v. Snow Becker Krauss, P.C.*, 975 N.Y.S.2d 119, 120 (App. Div. 2013) ("Although the plaintiff did not discover that his attorneys' alleged advice was incorrect until years later, what is important is when the malpractice was committed, not when the client discovered it." (internal quotation marks, citations, and alteration omitted)); *Alicanti v. Bianco*, 767 N.Y.S.2d 815, 816 (App. Div. 2003) ("A client's ignorance of the alleged wrong or injury has no impact upon when the cause of action accrues.").

Carver alleges that L&W committed malpractice by failing to inform Carver that Church of God was the record owner of the property, and by failing to review Full Gospel's Petition and Order in order to investigate or reconcile this discrepancy. (Carver Am. Compl. ¶¶ 18-20.) Carver further alleges that L&W committed malpractice by failing to inform Carver that Roberts executed the Deeds purporting to transfer the Property to Full Gospel on the day of the closing, or that Carver could cancel the loan or seek to invalidate the Deeds because there was no court approval of the conveyance. (*Id.* ¶¶ 21-27.) Although Carver does not dispute that the attorney-client relationship ended on or shortly after the September 1, 2009 closing, Carver argues that the cause of action did not accrue until Church of God took action to quiet title in September 2014. However, it is well-established under New York law that a claim of legal malpractice accrues when the legal

4

malpractice occurs, even if a plaintiff is not aware of or does not feel the effects of the malpractice until a later date. *See, e.g.*, *McCormick v. Favreau*, 919 N.Y.S.2d 572, 575 (App. Div. 2011); *Lincoln Place, LLC v. RVP Consulting, Inc.*, 896 N.Y.S.2d 47, 48 (App. Div. 2010).

Specifically, to the extent that Carver argues that it was unable to plead a claim for legal malpractice until Church of God took action to quiet title because, until that occurred, there was no actionable injury, L&W has pointed to a number of cases that directly contradict such an argument. For example, in *McCormick*, the court found that the statute of limitations accrued when the defendant attorney represented plaintiff in connection with a property and sales agreement in 1999, as opposed to when the agreement was found to lack an essential term and, thus, to be void, in 2007. 919 N.Y.S.2d at 575. Similarly in *Lincoln Place, LLC*, the court found that the statute of limitations accrued when the defendant attorney, who negotiated a lease on plaintiff's behalf, assigned the lease rather than designating a lessee, causing plaintiff to remain liable for full performance of a tenant's obligations under the lease, even though the assignee did not default and trigger plaintiff's liability for outstanding rent until a year later. 896 N.Y.S.2d at 48; *see also Hasty Hills Stables, Inc. v. Dorfman, Lynch, Knoebel & Conway, LLP*, 860 N.Y.S.2d 182, 183 (App. Div. 2008) (holding legal malpractice claim accrued when the parties closed on the property in 1996, even though new owner did not exercise defeasance clause to terminate the lease until 2003).

Additionally, although Carver argues that it had no actionable injury when the Loan was closed and Deeds were executed because, at that point, the conveyance was merely voidable under Section 12(9) of New York Religious Corporation Law as opposed to void, that distinction does not alter the Court's analysis.[2] As an initial matter, Carver has pointed to no case law to support its argument that a voidable transaction cannot give rise to a legal malpractice claim until the transaction is voided. Further, as discussed *supra*, under New York law, it is clear that a claim for legal malpractice accrues at the time the malpractice occurs, even when the injury occurred at a later date and was not guaranteed to occur. *See, e.g.*, *Lincoln Place, LLC*, 896 N.Y.S.2d at 48; *Hasty Hills Stables, Inc.*, 860 N.Y.S.2d at 183.[3]

Thus, because the legal malpractice claim accrued on September 1, 2009, for statute of limitations purposes, when the alleged legal malpractice occurred, Carver's claim is barred by the statute of limitations.[4] Accordingly, L&W's motion to dismiss is granted.

IV. CONCLUSION

For the reasons set forth herein, L&W's motion to dismiss is granted, and Carver's legal malpractice claim against L&W is

---

[2] Although the parties dispute whether the conveyance was void or voidable, the Court need not reach this issue, because even assuming the conveyance was merely voidable, the statute of limitations began to run from the date of the conveyance.

[3] Although Carver cites *Frederick v. Meighan*, 905 N.Y.S.2d 635, 639 (App. Div. 2010) in support of its argument that the statute of limitations began to run once Church of God took action to quiet title in 2014, the Court finds *Frederick* to be distinguishable. In particular, in *Frederick*, the plaintiff was initially successful in their underlying lawsuit and did not suffer an adverse judgment until the appeal when the court awarded specific performance to defendants.

[4] Further, Carver has raised no basis to apply the doctrine of equitable estoppel to its legal malpractice claims.

dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   October 3, 2016
         Central Islip, NY

\*\*\*

L&W is represented by David S. Wilck and Avigael C. Fyman of Rivkin Radler LLP, 929 RXR Plaza, Uniondale, New York 11556. Carver is represented by Antonia M. Donohue and Frank C. Dell'Amore of Jaspan Schlesigner LLP, 300 Garden City Plaza, Garden City, New York 11530.